AMBROSINA VÉLEZ, Plaintiff and Appellee, *v.* GOVERNMENT OF THE CAPITAL, Defendant and Appellant.

No. 10710. Argued November 1, 1954.—Decided December 28, 1954.

664

*Samuel R. Quiñones* for appellant. *Marcelino Romany* for appellee.

PER CURIAM.

On August 1, 1949, Ambrosina Vélez filed a complaint for damages against the Government of the Capital.[1] She alleged in synthesis that on July 6, while she was walking on the east side of the sidewalk of José de Diego Ave. in this city and, as a consequence of the negligence of defendant corporation, she fell, fracturing her left leg and sustaining, as a result of this accident, damages for the total amount of $10,000.

The Government of the Capital answered and alleged that the complaint failed to state a cause of action and denied its essential facts. The case was tried and the trial court

---

[1] Subsequently the People of Puerto Rico appeared as defendant. It was thereafter excluded, and judgment was rendered dismissing the complaint as to the People. However, from the record it appears that said judgment was subsequently set aside restoring "the status quo existing before the judgment was rendered, leaving both parties free to request the setting of a day for the hearing of the motion of the People of Puerto Rico, praying that judgment be rendered in its favor".

rendered judgment for plaintiff, ordering the Government, defendant herein, to pay plaintiff the amount of $1,150 —$600 for physical pain and mental anguish; $300 for loss of 10 per cent of plaintiff's power to walk; and $250 for medical services—plus costs, and $200 for attorney's fees. That judgment is based on an opinion which includes the following findings of fact:

"1—Plaintiff Ambrosina Vélez is a woman of about fifty years of age, is in good health and has a strong constitution. For a year and a half plaintiff has been living in house No. 355, situated in the east side of José de Diego Avenue in this City of San Juan, Puerto Rico.

"2—On July 6, 1949, plaintiff was paying a visit at the house of Dr. Suárez. Between 9:30 and 10:00 p. m. of that day she returned to her home in the automobile of Eugenio Benítez Gautier, who was also visiting the house of Dr. Suárez. Upon reaching De Diego Avenue, Benítez was unable to stop his automobile in front of the entrance to plaintiff's residence because a bus that was stopped there, as well as a number of persons, prevented him from doing so; he then stopped farther back, parking his vehicle about a foot from the curb or wall which divides the right sidewalk going towards Loíza Street, from José de Diego Avenue. Plaintiff alighted from the automobile in that place and tried to cross a grassplot or flower bed which separates her home from that place but she stepped on the roots of a tree planted in the flower bed, and fell down with the weight of her body on her left leg. Benítez and his wife assisted plaintiff and carried her to her home.

"3—As a result of this accident plaintiff suffered a simple fracture of the exterior malleolous of her left leg which kept her confined in bed for two months, although after the first few days she was able to walk on crutches or with the aid of a walking stick.

"4—Dr. José Noya Benítez attended plaintiff from July 11 until September 29, 1949. This physician placed plaintiff's leg in a plaster cast from the lower part of her left knee to the toes in order to immobilize her ankle. On July 28, the cast was removed and an elastic bandage was used, which they removed once or twice a week for heating treatments and massages.

"5—When the accident occurred, as well as during the whole time that plaintiff was under medical treatment, she suffered intense physical pain.

"6—Plaintiff used to devote herself to housework and used to participate actively in social life and in charity work.

"7—Plaintiff has suffered a loss of 10 per cent in her power to walk, although that disability may diminish in the course of time. Actually she limps a little upon taking the first few steps but after a while she walks normally.

"8—The professional services rendered by Dr. Noya to plaintiff are worth $250.

"9—In the sidewalk, which is on the east side of De Diego Avenue and from the intersection of this street with Ponce de León Avenue and even farther down from plaintiff's house, going in an opposite direction to Ponce de León Avenue, there are grassplots or flower beds which consist of an unpaved space for ornamental plants between the curb of the street and the sidewalk.

"10—In the flower bed where defendant fell the earth is at least two inches below the level of the pavement of the sidewalk and from this earth there sprouted out the roots of a tree planted there. As a result of plaintiff's having stepped over one of those roots, she suffered the fall mentioned in the complaint.

"11—The night of the accident was the first time that plaintiff tried to cross the flower bed and, although she knew of its existence in that spot, she had never seen the roots sprouting from the earth.

"12—The aforesaid flower bed is rectangular in shape but it is much longer than it is wide and it lies between the concrete wall, that separates the sidewalk from the street, and the line of construction. Thus it is within the sidewalk itself. It has no fence or any other kind of enclosure around it, nor has it any ornamental plants with the exception of a tree with a heavy trunk.

"Generally the pedestrians walk across these flower beds in order to save time and distance, either to come down to the street or to go up to the sidewalk."

The opinion also contains conclusions of law in which, among other things, it is said that a careful study of Joint Resolution No. 16 of April 27, 1933 "has convinced us that

it was not the intention of the Legislature to transfer to the Government of Puerto Rico the control and supervision of the sidewalks on both sides of De Diego Avenue"; that "we conclude . . . that the accident described in the complaint occurred on the sidewalk which was under the control and supervision of defendant"; and that "the sidewalk being under the supervision and control of the municipality, it was the latter's duty to keep it in a condition of reasonable safety." The trial court also stated that "the special conditions in which the aforesaid flower bed was kept, that is, without having it filled with earth up to at least the pavement level, and the existence of thick roots at the bottom of the trees and above the ground level, constituted, in our judgment, a condition of danger and therefore of negligence on defendant's part"; and that "it is true that these flower beds are not constructed for the use of pedestrians, but, nevertheless, defendant in this case was bound to anticipate its use by the public, especially when there is nothing in the evidence to reveal that defendant had taken any steps whatsoever to prevent it."

The Government of the Capital appealed. It now contends that the trial court erred:

(1) ". . . in establishing the conclusion of law, and in rendering judgment based on said conclusion, that it was not the intention of the Legislature, when approving Joint Resolution No. 16 of April 27, 1933, to transfer to the Government of Puerto Rico the control and supervision of the sidewalks on both sides of De Diego Ave., and also in basing that conclusion on the case of *City of Mobile* v. *Harker*, 85 So. 425.

(2) ". . . in establishing the conclusion of law and rendering its judgment based on said conclusion that it was defendant's duty to keep the sidewalk, on which the accident occurred, in conditions of reasonable safety.

(3) ". . . in establishing the conclusion of law and rendering its judgment based on the conclusion that defendant was bound to keep the flower beds of De Diego Avenue in the same condition of reasonable safety as the sidewalks.

(4) ". . . in establishing the conclusion of law and rendering judgment based on the conclusion that the accident alleged in the complaint was due to the fault and negligence of the Government of the Capital.

(5) ". . . in weighing the evidence in this case and in rendering judgment against defendant based on an erroneous weighing of evidence.

(6) ". . . in rendering judgment against defendant."

Joint Resolution No. 16 of April 27, 1933 "to establish connecting roads between the different insular roads affording communication between the city of San Juan and the Island, . . ." etc., in its first section provides:

"The Commissioner of the Interior is . . . directed to take charge of the repair and maintenance of the following sections of roads:

"(a) . . . . . . . .

"(b) Another section, 1,100 meters long, more or less, which starts from the intersection of Europa Street with the Miramar-Martín Peña road, and which, following this street for its entire length and De Diego Avenue, unites the said road with Fernández Juncos Avenue, Ponce de León Avenue, and Loíza Street at its intersection with De Diego Avenue;

"(c) . . . . . . . .

"(d) . . . . . . . ."

In its second Section it provides that:

"From and after the taking effect of this Act, *the sections of street mentioned in the preceding section hereof* shall be considered as a part of the insular roads subject to the provisions of the Act providing for the maintenance and policing of the public roads and highways of this island. *The Government of the Capital shall have jurisdiction over the two urbanized zones on both sides of said streets, and shall fix the location of the buildings and sidewalks to be constructed, according to the provisions of the municipal ordinances governing the matter.*" (Italics ours.)

In its third Section that:

"The Commissioner of the Interior shall take care of the maintenance of *said sections of street* in the same manner as other insular roads." (Italics ours.)

The contention of the Government of the Capital is that by an express provision of the aforesaid Joint Resolution, the place where the accident occurred is under the supervision and control of The People of Puerto Rico and not of the Government of the Capital. We disagree. The wording of the Resolution is clear to the effect that only those sections of the streets designated as such in the Resolution shall be transferred to the People of Puerto Rico, there remaining under the jurisdiction and control of the Government of the Capital by express provision of the statute the urbanized zones on both sides of the streets thus transferred to The People. De Diego Avenue in Santurce was one of the sections of streets transferred by this Resolution to the Government of Puerto Rico. The accident in question did not occur in the space used by the vehicles to travel, but in a piece of land existing along the avenue between the curb of the avenue and the part properly used as sidewalk.

In our opinion, the Joint Resolution is clear in its language. We construe it to the effect that only sections of streets used by vehicles of any kind for traveling were transferred to the People of Puerto Rico, leaving the jurisdiction and control of the urbanized zones on both sides of these streets—including the sidewalks and grassplots or flower beds—to the Government of the Capital, defendant herein. Since the language of the Resolution is clear, it is unnecessary to delve into an extensive discussion—as the parties do—of what is understood by the term streets or short cuts, or whether their ordinary definition includes sidewalks.

The trial court did not base its judgment on the case of *City of Mobile* v. *Harker*, 85 So. 425. It merely said "see" that case, in order to show that another court, in a like situation, had arrived at a similar conclusion.

In view of the foregoing, we are of the opinion that the first error was not committed.

 The second, third and fourth errors assigned can be discussed jointly. The Government of the Capital having the control and supervision of the sidewalks on both sides of De Diego Avenue, it was its duty to maintain them in reasonably good condition, including likewise the grassplots or flower beds which extend along the avenue. See *Davidson* v. *H. I. Hettinger & Co.*, 62 P.R.R. 286, 293.

The municipality knew, or should have known, that the public continually walked across those flower beds, either to cross the avenue from one side to another, or to take or alight from the buses, or to take or alight from any other motor vehicle. *Cf. Tavárez* v. *San Juan Lodge*, 68 P.R.R. 681. Therefore, plaintiff was not guilty of contributory negligence in crossing the grassplot, that is, in doing what everyone else did. Under such circumstances, the duty of the municipality to keep the aforesaid grassplots in good condition was inescapable. Since, according to the evidence, the flower bed where the accident occurred was several inches below the curb and the sidewalk, and the roots of the tree sprouted out several inches from the earth, to permit such a thing constituted negligence on the part of the Government.

 The inspection we have made of the transcript of the evidence convinces us that the trial court did not err in weighing the evidence, since its findings of fact are supported by the evidence which appears in the record. Therefore, such findings will not be disturbed on appeal. *Palmer* v. *Barreras*, 73 P.R.R. 266; *Davidson* v. *H. I. Hettinger & Co.*, *supra; Rodríguez* v. *Arocho*, 62 P.R.R. 672; Rule 52 of the Rules of Civil Procedure.

Since the errors assigned are nonexistent, the judgment appealed from will be affirmed.

Mr. Justice Pérez Pimentel did not participate herein.